Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, April 13, 2006 1:03:23 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CARL WILLIAM FRANKLIN ) | CASE NO. 04-1959 |
| SHELLY MARIE NICHOLS-FRANKLIN ) | |
| ) | |
| Debtors. ) | |

## MEMORANDUM OPINION

Carl William Franklin and Shelly Marie Nichols-Franklin (the "Debtors") object to the secured classification of Claim Number 9 filed by Eastern Panhandle Community Federal Credit Union (the "Credit Union") in the amount of $3,747. The Credit Union asserts that Claim Number 9 is secured under a cross-collateralization clause in two other security agreements that the Debtors executed with it. The Debtors assert that the description of the collateral that ostensibly secures Claim Number 9 is too vague.

The court held a hearing on this matter on April 7, 2006, in Martinsburg, West Virginia, at which time the court took the matter under advisement. For the reasons stated herein, the court will overrule the Debtors' objection.

## I. BACKGROUND

The Debtors executed three security agreements with the Credit Union. On December 30, 2002, the Debtors signed a security agreement to receive a $22,907 extension of credit secured by the Debtors' 2003 Chevrolet Silverado truck. On May 10, 2004, the Debtors signed a security agreement to receive a $21,350 extension of credit secured by the Debtors' 2004 GMC Envoy. The Debtors do not contest the validity of these two security agreements or the Credit Union's perfected status in the two automobiles.

1

The Debtors do contest the secured status of a $2,200 loan that the Credit Union issued to the Debtors on October 3, 2003. Rather than specifically listing an item of collateral as security, the agreement merely refers, under the "Security Offered" portion of the loan documents, to the "Security Agreement" executed by the Debtors. The security agreements for all three loans extended by the Credit Union contain nearly identical language:

> The security interest secures the advance and any extensions, renewals, or refinancings of the advance. It also secures any other advances you have now or [will] receive in the future under the Plan and any other amounts or loans, including any credit card loan you owe us for any reasons now or in the future . . . .

(Claim Nos. 7, 8, 9).

## II. DISCUSSION

The Credit Union contends that the money advanced on October 3, 2003, is secured by the two motor vehicles identified in the other two security agreements that the Debtors executed with it. The Debtors object that the description of the collateral for the October 3, 2003 loan is insufficient to create any security interest in their motor vehicles.

The West Virginia Commercial Code applies to all transactions that create a security interest in personal property. W. Va. Code § 46-9-109(a)(1) ("[T]his article applies to: (1) A transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract . . . ."); *cf.* § 46-9-303(c) ("The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title . . . ."). Under the Commercial Code, "[a] security agreement may provide that collateral secures . . . future advances or other value, whether or not the advances or value are given pursuant to commitment." W. Va. Code § 46-9-204(c). Official Comment 5 further explains the meaning of this subsection:

> Under subsection (c) collateral may secure future as well as past or present advances if the security agreement so provides. This is in line with the policy of this article toward security interests in after-acquired property under subsection (a). Indeed, the parties are free to agree that a security interest secures any obligation whatsoever. Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law. This article rejects the holdings of cases decided under former article 9 that

2

applied other tests, such as whether a future advance or other subsequently incurred obligation was of the same or a similar type or class as earlier advances and obligations secured by the collateral.

§ 46-9-204 cmt. 5.

In this case, the security agreement executed by the Debtors on December 30, 2002, states that the Credit Union's security interest in the 2003 Chevrolet Silverado also secures any other amounts or loans that the Debtors may owe to the Credit Union in the future. Likewise, the security agreement executed on May 10, 2004, states that the Credit Unions's security interest in the 2004 GMC Envoy also secures any outstanding amounts or loans that the Debtors owe it. The security agreements executed on December 30, 2002, and on May 10, 2004, are broad enough to encompass the funds advanced to the Debtor on October 3, 2003. *E.g.*, *In re Kennemer*, 143 B.R. 275 (N.D. Ala. 1991) ("The unambiguous contractual language embodied in the Loanliner Agreement and the three Loanliner Advance Request Vouchers clearly reflects the intent of the parties that collateral given as security for any advance pursuant to the terms of the Loanliner Agreement served as security for all subsequent advances made under the terms of the agreement, and an enforceable future advance clause was thus formed . . . .").

### III. CONCLUSION

The Credit Union states that the value of all three of its proofs of claim total $42,410 and that the value of the Debtors' two automobiles is $48,725. Accordingly, the Credit Union is fully secured and the Debtors' objection to Claim Number 9 will be overruled. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.